UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARTEC GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREY KLIMOV, et al.,<br><br>Defendants. | Case No.  15-cv-03449-RMW<br><br>**ORDER DENYING AXON BUSINESS SYSTEMS, LLC'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 85 |

Plaintiff Artec Group, Inc. alleges trade secret misappropriation, breach of contract, and related causes of action against three former employees and three corporations. Defendant Axon Business Systems, LLC moves to dismiss Artec's claims against Axon for lack of personal jurisdiction and insufficient service of process. Dkt. No. 85. Artec opposes Axon's motion. Dkt. No. 89. Axon filed a reply. Dkt. No. 95. The court heard argument on March 25, 2016. Having considered the parties' arguments, this court denies Axon's motion.

**I.    BACKGROUND**

Artec Group, Inc. is a California corporation specializing in the design and manufacture of 3D scanners and facial recognition devices. Dkt. No. 80, First Amended Complaint ("FAC") ¶ 19. Artec alleges that a group of former Artec officers, directors, and employees breached their employment contracts by conspiring to misappropriate trade secrets and compete directly with

Artec through two newly formed companies, A-Star LLC and ID-Wise SIA. *Id.* ¶¶ 3, 85-94. Artec alleges that Axon Business Systems, LLC, a third corporate defendant, breached an Artec distribution agreement by purchasing and receiving Artec-branded products from defendant A-Star. *Id.* ¶¶ 20, 139-143. Artec originally brought this action against sixteen defendants. Dkt. No. 1. On October 26, 2015, the fifteen defendants who had been served (all but Axon) moved to dismiss. Dkt. No. 20. On November 9, 2015, Artec voluntarily dismissed as to ten of the original defendants. Dkt. No. 47. On December 22, 2015, this court dismissed Artec's claims against corporate defendants ID-Wise and A-Star with leave to amend. Dkt. No. 78. The court denied the motion to dismiss as to the three remaining individual defendants. *Id.* On January 15, 2016, plaintiff filed the First Amended Complaint, asserting claims against the three individual defendants, as well as corporate defendants ID-Wise, A-Star, and Axon. Dkt. No. 80. Axon now moves to dismiss for lack of personal jurisdiction and insufficient service of process. Dkt No. 85.

Axon Business Systems, LLC is registered and headquartered in the United Arab Emirates; Axon maintains no presence in California. FAC ¶ 19; Dkt. No. 89-1, Mostafa Decl. ¶¶ 3-9. On May 28, 2012, an Artec account manager in Russia sent an unsolicited email to an Axon manager suggesting a partnership between the parties. *Id.* ¶¶ 10-11. After a follow up email from the Artec account manager, the parties arranged to meet in Dubai and continued to negotiate via email. *Id.* ¶¶ 12-14. The parties reached agreement and entered into a Non-Exclusive Distribution Agreement, effective August 8, 2012. FAC ¶¶ 20, 76, Mostafa Decl. ¶ 15. Under the Non-Exclusive Distribution Agreement, Axon had the right to distribute Artec's "Broadway 3D" scanners to customers in the United Arab Emirates. FAC ¶ 76; Mostafa Decl. ¶¶ 15-17. The term of the agreement was one year, but certain provisions of the agreement survived its termination. FAC ¶ 77. For example, Axon has a continuing obligation to maintain the secrecy of Artec's confidential information and refrain from selling "products similar to or competitive with" Artec's products in the UAE without Artec's permission. *Id.* ¶¶ 20, 77-83. Artec also alleges that the parties continued to do business as if the agreement were in effect after the one-year term expired. *See* Dkt. Nos. 94-1, 90-7, Yukhin Decl. ¶ 14 and Ex. F.

Artec alleges that Axon breached the terms of the Non-Exclusive Distribution Agreement on January 7, 2015 by contracting for the purchase of Artec Broadway 3D devices from defendant A-Star at lower prices than Artec's own wholesale list prices. *Id.* ¶¶ 11, 90. Artec alleges that the Broadway 3D devices sold to Axon were either "purloined" from Artec's warehouses or "covertly built" by defendants using misappropriated Artec parts and technology. *Id.* ¶ 142; *see also* ¶¶ 20, 34, 36 55, 125, 127. Artec informed Axon of the alleged breach through counsel on May 3, 2015, but alleges that Axon refused to cooperate with Artec to remedy the breach. *Id.* ¶¶ 141-42. Artec asserts seven causes of action related to the alleged breach against Axon: Count Four ("Breach of Written Distributor Agreement"), Count Five ("Unjust Enrichment"), Count Seven ("Breach of Implied Covenant of Good Faith and Fair Dealing"), Count Nine ("Conversion"), Count Thirteen ("Civil Conspiracy"), Count Fourteen ("Constructive Trust"), and Count Sixteen ("Unfair Competition"). FAC ¶¶ 179-187; 188-192; 198-202; 212-214; 251-257; 258-266; 282-286.

## II.     ANALYSIS

Axon moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In response to a motion to dismiss, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher*, 911 F.2d at 1361). "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

Axon also moves to dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). When the validity of service is contested, plaintiff bears the burden to prove valid service. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Wright v. City of Santa Cruz*, No. 13-CV-01230-BLF, 2014 WL 3058470, at *6 (N.D. Cal. July 3, 2014) (quoting *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1228 (D. Or. 2013)).

**A. Personal Jurisdiction**

If no federal statute governs personal jurisdiction, the law of the forum state applies. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction as long as doing so comports with federal constitutional due process. *Id.* at 1320. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). General jurisdiction requires "'continuous and systematic general business contacts,' that "'approximate physical presence' in the forum state." *Schwarzenegger*, 374 F.3d at 801(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984)). For specific jurisdiction to exist, "the defendant's suit-related conduct must create a substantial connection" with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Artec contends that Axon is subject to specific jurisdiction in this case.

The "minimum contacts" necessary to create specific jurisdiction "must arise out of contacts that the 'defendant *himself* 'creates with the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). The analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. The Ninth Circuit has articulated the following three-prong test for analyzing minimum contacts for specific jurisdiction: (1) the non-resident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; (2) the claim must be one which arises out of or is related to the defendant's forum-related activities; and

4

(3) the exercise of jurisdiction must comport with fair play and substantial justice. *See Schwarzenegger*, 374 F.3d at 802. Plaintiff must prove the first two prongs, at which point "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Picot v. Weston,* 780 F.3d 1206, 1211-12 (9th Cir. 2015) (quotations omitted).

### 1. Purposeful Availment

The first prong of the test for specific jurisdiction "includes both purposeful availment and purposeful direction." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). "It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Id.* "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (citations omitted). Purposeful availment analysis is appropriate because all of Artec's claims against Axon are related to the contractual relationship between the parties. *See, e.g.*, *Boschetto v. Hansing*, 539 F.3d at 1016 ("we have typically analyzed cases that sound *primarily* in contract . . . under a 'purposeful availment' standard") (emphasis added); *Sher v. Johnson*, 911 F.2d at 1362 (analyzing purposeful availment for tort and contract claims because all claims arose out of contractual relationship).

The parties agree that a "contract alone does not automatically establish minimum contacts in the plaintiff's home forum" under the purposeful availment test. *Picot*, 780 F.3d at 1212 (quoting *Boschetto*, 539 F.3d at 1017). Rather, a defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* (quoting *Sher,* 911 F.2d at 1362). Axon argues that Artec cannot show purposeful availment because the Non-Exclusive Distribution Agreement was not negotiated, executed, or performed by Axon in California. While a "showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there," (*Schwarzenegger*, 374 F.3d at 802), the court must consider "prior negotiations and contemplated future consequences,

along with the terms of the contract and the parties' actual course of dealing" in determining purposeful availment (*Picot*, 780 F.3d at 1212 (quoting *Burger King,* 471 U.S. at 47)).

After considering the parties' "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing," the court concludes that Axon's California contacts are "substantial and not merely random, fortuitous, or attenuated." *Vance's Foods, Inc. v. Special Diets Europe Ltd.*, No. 2:11-CV-02943-MCE, 2012 WL 1353898, at *5 (E.D. Cal. Apr. 16, 2012) (quotation omitted). In *Vance's Foods*, the court found that defendant had taken "deliberate action" in California when it negotiated and entered into long-term agreements to distribute a California company's products in Europe, even though the distribution agreements were negotiated and formed in Ireland rather than California. 2012 WL 1353898 at *5. Similarly in this case, Axon negotiated and entered into a long-term agreement to distribute California-based Artec's products in the UAE, although the Non-Exclusive Distribution Agreement was not negotiated or formed in California. The court finds that although the Axon's negotiations and correspondence with Artec representatives outside of California do not establish Axon's purposeful availment, the terms of the Non-Exclusive Distribution Agreement and its contemplated future consequences establish Axon's minimum contacts with this forum.

### a. Negotiations

Artec argues that the parties were equal participants in contract negotiations, and that "substantial dealings," even before a contract is executed, may "independently amount to minimum contacts." *Juniper Networks, Inc. v. Altitude Capital Partners, L.P.*, No. C 09-03449 JSW, 2010 WL 5141839, at *6 (N.D. Cal. Dec. 13, 2010) ("as evidenced by Altitude's extensive negotiations with ESR that ultimately culminated in the Purchase Agreement [with a another party], Altitude has contacts with California"); *see also Burger King*, 471 U.S. at 479-80 (defendant "deliberately reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization"). Artec asserts that Axon's purposeful availment is illustrated by 2013 communications from Axon's General Director to an Artec representative in

6

1  Russia seeking to secure favorable contract terms for Axon. *See* Yukhin Decl. ¶ 14 and Ex. F.
2  Axon objects that because Artec first reached out to Axon, the negotiations do not reflect Axon's
3  purposeful availment. Axon further argues that Axon never communicated with Artec
4  representatives in California. Axon relies on *Vance's Foods*, in which the district court
5  emphasized that defendant initiated and aggressively pursued a relationship with plaintiff in
6  California, including by contacting the plaintiff's director at his California home. *See* 2012 WL
7  1353898 at *5.
8      Axon's negotiations with Artec representatives outside of California do not establish
9  purposeful availment. Artec does not allege that Axon negotiated with any Artec employee in
10 California. While the court is not persuaded that a defendant may never establish minimum
11 contacts through negotiations as long as some other party initiated the contact, Artec cites no
12 authority holding that a defendant establishes minimum contacts through negotiations occurring
13 entirely outside of the forum state, no matter how aggressively defendant pursues such
14 negotiations. Such a holding would "mistakenly 'allow a plaintiff's contacts with the defendant
15 and forum to drive the jurisdictional analysis.'" *Picot*, 780 F.3d at 1213 (quoting *Walden*, 134
16 S.Ct. at 1125)).

### b. Actual Course of Dealing

18     Artec argues that the lengthy course of dealing between the parties weighs in favor of
19 purposeful availment. Although the contract technically expired after one year, Artec alleges that
20 the parties continued to conduct business for almost three years and engaged in significant
21 correspondence during that time. *See Google, Inc. v. Eolas Techs. Inc.*, No. 13-CV-05997-JST,
22 2014 WL 2916621, at *3 (N.D. Cal. June 24, 2014) (finding minimum contacts based on, inter
23 alia, defendant's continuing contractual obligations and "length of time" that defendants were
24 subject to the agreement) (citing *Burger King*, 471 U.S. at 475-76; *Akro Corp. v. Luker*, 45 F.3d
25 1541, 1546 (Fed. Cir. 1995)); *Principal Residential Mortg., Inc. v. Mac-Clair Mortg. Corp.*, 336
26 F. Supp. 2d 922, 929 (S.D. Iowa 2004) ("the interstate communications are voluminous and
27 occurred over a period of three years"). As in response to Artec's negotiation argument, Axon

objects that Axon never communicated with Artec representatives in California during the course of the parties' dealings.

The parties' correspondence—even over a three year period—cannot establish purposeful availment because Axon never corresponded with anyone in California. In all of the cases cited by Artec, the defendant had contacts with the plaintiff *in the forum state*. *See Burger King*, 471 U.S. at 475-76 ("Miami headquarters and the Michigan franchisees carried on a continuous course of direct communications by mail and by telephone"); *Akro Corp.*, 45 F.3d at 1546 (letters to Ohio residents establish purposeful direction); *Google, Inc. v. Eolas Techs. Inc.*, 2014 WL 2916621 at *3 ("Google has identified other contacts with California, including the December 19, 2013 letter sent from Eolas to Google in California."); *Principal Residential*, 336 F. Supp. 2d at 925 ("Plaintiff and Defendant have been in a business relationship for three years, which resulted in Defendant making numerous contacts with the State of Iowa with the help of modern communication technology."). Artec cites no authority holding that the length of a business relationship alone may establish minimum contacts with plaintiff's forum state. Axon communicated only with Artec employees outside of California, and Artec's connection to California cannot serve as the basis for a finding of purposeful availment by Axon. *See Picot*, 780 F.3d at 1213 ("inquiry is limited to examining contacts that proximately result from actions by the defendant *himself*.") (quotation omitted).

### c. Terms of the Contract and Future Consequences

Artec alleges that several contract terms of the Non-Exclusive Distribution Agreement establish Axon's minimum contacts with the forum state. Specifically, Artec notes that the agreement identifies Artec as a California corporation, calls for any notice to be provided to Artec in California, includes a California choice-of-law provision, invokes U.S. law, and lists prices in U.S. dollars. Axon argues that these terms "individually and collectively fall far short" of establishing purposeful availment. Dkt. No. 95 at 7.

It is true that no single contract term identified by Artec would establish purposeful availment. *See, e.g.*, *Royal & Sun All. Ins. Plc v. Castor Transp., LLC*, No. 13-CV-01811-

8

BAS(DHB), 2016 WL 633443, at *6 (S.D. Cal. Feb. 17, 2016) (finding delivery of a check made out to defendant in U.S. dollars to an address in California insufficient to establish defendant's purposeful availment); *Dynamic Software Servs. v. Cyberbest Tech., Inc.*, No. C-13-04217 DMR, 2014 WL 3373924, at *9 (N.D. Cal. July 9, 2014) (finding no purposeful availment where "only two significant factors" that might weigh in favor were choice-of-law provision and defendant's apparent knowledge of plaintiff's principal place of business). However, each of the contract terms identified by Artec is relevant to the purposeful availment inquiry. In *Burger King*, for example, the Supreme Court considered evidence of the contract documents themselves, including evidence that defendant "knew that he was affiliating himself with an enterprise based primarily in Florida," evidence that the contract would be governed by Florida law, and evidence that "all relevant notices and payments" under the agreement must be sent to Burger King's Florida headquarters. 471 U.S. at 478-82. In this case, the court is persuaded that, taken together, the contract terms weigh in favor of purposeful availment.

Axon "knew that it was entering into a long-term contractual relationship with a company located in California" because the contract indicated Artec's status as a California corporation. *Vance's Foods*, 2012 WL 1353898 at *5. Section 11.11 of the Non-Exclusive Distribution Agreement requires that "[a]ny notice required by this Agreement" be sent to Artec's California headquarters. Dkt. No. 90-1 § 11.11. Axon argues that there is no evidence that Axon ever actually provided notice of anything to Artec in California; however, the notice provision of the parties' agreement shows that Axon deliberately took on obligations involving California. Moreover, although the parties did not renew their agreement, Axon continued to be bound by several provisions on the contract requiring notice to Artec in California. *See id.* §§ 7.2, 8.2 (identifying obligations that "shall survive termination"); § 2.9 ("Distributor shall keep ARTEC informed of Distributor's current or future sales of equipment or products similar to or competitive with the Products in the Territory."); § 2.11 ("Distributor shall notify ARTEC promptly of any and all infringements, limitations, simulations, illegal uses, or misuses of the ARTEC Marks, patents, and other intellectual property rights."). These terms demonstrate that the parties envisioned future

consequences in California that would extend indefinitely, and therefore support a finding of minimum contacts that are more than random, fortuitous, or attenuated. *See Burger King*, 471 U.S. at 479-80 ("In light of Rudzewicz's voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the quality and nature of his relationship to the company in Florida can in no sense be viewed as random, fortuitous, or attenuated.").

The California choice-of-law provision reinforces Axon's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King*, 471 U.S. at 482 (1985); *see also Vance's Foods*, 2012 WL 1353898 at *6 ("While the choice-of-law clause is not sufficient by itself to determine that Defendants availed themselves of the benefits and protections of the laws of the forum state, it is a relevant factor. "). The cases cited by Axon on this point do not say otherwise. In *Vista Food Exchange, Inc. v. Champion Foodservice, L.L.C.*, No. 14 CIV. 804 RWS, 2014 WL 3857053 (S.D.N.Y. Aug. 5, 2014), the court noted that "[g]enerally, a choice of law provision in a contract *alone* is insufficient to confer jurisdiction," but found that the clause at issue established consent to jurisdiction under New York law. 2014 WL 3857053 at *10 (emphasis added). In *Nimbus Data System, Inc. v. Modus LLC*, No. 14-CV-04192 NC, 2014 WL 7387200 (N.D. Cal. Dec. 29, 2014), the court found that the choice-of-law provisions contained in related contracts did not support specific jurisdiction because plaintiff's claims arose out of different agreement. 2014 WL 7387200, at *6 ("the dispute arises out of a purchase order agreement that does not itself contain a California arbitration or choice-of-law provisions"). In *Dynamic Software Service v. Cyberbest Technology, Inc.*, No. C-13-04217 DMR, 2014 WL 3373924 (N.D. Cal. July 9, 2014) and *Fujitsu-ICL System, Inc. v. Efmark Service Co. of Illinois*, No. 00-CV-0777 W (LSP), 2000 WL 1409760 (S.D. Cal. June 29, 2000), the district courts merely restated the holding from *Burger King* that although a "choice-of-law provision may reinforce the defendant's deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there," such a provision does not confer jurisdiction "by itself." *Dynamic Software*, 2014 WL 3373924 at *9; *Fujitsu-ICL*, 2000 WL 1409760 at *5 (provision "may be considered in combination with other contacts"). Nothing in these cases suggests that the

10

court should ignore the choice-of-law provision.

Similarly, while the court is not convinced that contract terms invoking U.S. federal law and pricing products in U.S. currency would be sufficient to establish purposeful availment in California by themselves (*cf. Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 608 (1992) ("Argentina satisfied the "minimum contacts" test . . . by issuing negotiable debt instruments denominated in United States dollars and payable in New York and by appointing a financial agent in that city.")), such terms reinforce that Axon deliberately affiliated itself with the United States. Viewed in light of the other California-related contract provisions, these terms weigh in favor of a finding that Axon could reasonably anticipate being haled into court in the U.S. forum where Artec is headquartered.

### 2. Arises out of or Relates to Defendant's Forum-Related Activities

The second prong of the test for specific jurisdiction requires that plaintiff's claims arise out of or relate to the defendant's forum-related activities. This is "measured in terms of but for causation." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000), *see also Panavision*, 141 F.3d at 1322 ("We must determine if the plaintiff....would not have been injured but for the defendant's...conduct directed toward [plaintiff] in [the forum]."). Here, Artec's claims against Axon arise out of Axon's alleged breach of the Non-Exclusive Distribution Agreement. Axon argues that Artec's claims do not arise out of Axon's forum-related activities because Artec has not identified any such forum-related activities. This court has determined that Axon purposefully established minimum contacts in this forum as evidenced by the terms of the Non-Exclusive Distribution Agreement. Therefore, the "arising out of" requirement is met.

### 3. Fair Play and Substantial Justice

The third prong of the specific jurisdiction test ensures that the exercise of personal jurisdiction comports with fair play and substantial justice. Jurisdiction is presumed to be reasonable once the first two prongs have been met. *See Schwarzenegger*, 374 F.3d at 802. The burden then shifts to defendant "to 'present a compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *CollegeSource, Inc. v. AcademyOne,*

11

*Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (quoting *Burger King,* 471 U.S. at 477-78)). In determining "whether the exercise of jurisdiction comports with fair play and substantial justice and is therefore reasonable," the court considers the following seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002)). Considering all of the factors, the court finds that Axon has not made a "compelling case" for why exercise of personal jurisdiction would be unreasonable.

Axon addresses only the first, second, and fifth factors. Axon argues that it had "no reasonable notice" that contracting with Artec "might later cause it to be haled into court halfway across the globe." Dkt. No. 85 at 11. However, the court's finding of purposeful availment establishes some level of purposeful interjection into California's affairs. The court acknowledges that it will be somewhat burdensome for Axon to litigate in the Northern District of California when it is based in the UAE. *See, e.g.*, *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano City*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). However, "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Courts routinely reject claims by foreign defendants that it would be too burdensome for them to defend themselves outside their home country, particularly when those companies "use technology and transportation to carry on the business relationship at issue." *Pandigital, Inc. v. DistriPartners B.V.*, No. C 12–01588–CW, 2012 WL 6553998, at *4 (N.D. Cal. Dec. 14, 2012). Axon does not elaborate on any specific burdens it would face in defending litigation here. Similarly, Axon argues that it would be "inefficient" for Axon to litigate in this district without identifying specific inefficiencies that

would attend judicial resolution in this district.

Axon does not assert any conflict with the sovereignty of defendant's state, nor does Axon challenge California's interest in adjudicating the dispute or the importance of this forum to the Artec's interest in convenient and effective relief. Neither party addresses existence or availability of an alternative forum. The court concludes that Axon has not presented a compelling case against the court's exercise of personal jurisdiction.

### B. Sufficiency of Service

Artec must establish that service was valid under Federal Rule of Civil Procedure 4. *See Brockmeyer v. May*, 383 F.3d at 801 ("Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4.")

According to Artec, service was performed pursuant to Federal Rule of Civil Procedure 4(f)(2)(A), which provides for service in a foreign country "by a method that is reasonably calculated to give notice" as "prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." After Axon filed its motion to dismiss, Artec filed a signed notice of service in Arabic, accompanied by an English translation. Dkt. No. 87. Artec claims that this certificate of service establishes valid service because a "signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (quotation omitted). Axon argues, however, that the certificate is facially insufficient to establish compliance with UAE law as required in response to Axon's motion to dismiss.

Axon cites case law from the Southern District of Texas to establish the requirements for service in compliance with UAE law:

> In order to comply with UAE law, service of process must be completed by either (1) "a summons clerk who is appointed and trained by the relevant government authorities," or (2) "a private process server who works for a company authorized by the government of the UAE to serve process." Moreover, a "notification document" must be provided, which must include: "(1) the date and time of notification; (2) information about the party requesting service; (3) information about the party being served; (4) information about the 'Notification Officer'; (5) the subject of the notification; and (6) the 'full name of the person to whom notice

13

15-cv-03449-RMW
ORDER DENYING AXON BUSINESS SYSTEMS, LLC'S MOTION TO DISMISS
FC

is delivered and his signature, seal, or thumb print on the original [notification document] to acknowledge receipt or indicate refusal and the reason for such refusal."

Dkt. No. 85 at 12-3 (quoting *Nabulsi v. Nahyan*, No. CIV A H-06-2683, 2009 WL 1658017, at *7, 9 (S.D. Tex. June 12, 2009), *aff'd sub nom. Nabulsi v. Bin Zayed Al Nahyan*, 383 F. App'x 380 (5th Cir. 2010)). Artec does not dispute the accuracy of Axon's statement of the law; rather Artec contends the certificate shows that service was in compliance with UAE service requirements.[1] Artec asserts that the first two requirements are met because service was performed by someone "entrusted from Dubai Courts to serve the summons" from "the company that has been designated by the UAE Ministry of Justice to deliver Court Notices." Dkt. No 89 at 24. Artec also argues that the "notification document" requirements are satisfied because the filed certificate of service contains:

> (1) the date and time of notification ("28/01/2016 at 01:45 pm"); (2) information about the party requesting service ("Notifying Party: Artec Group Inc."); (3) information about the party being served ("Notified Party: Hamdan Mostafa . . . Axon Business Systems"); (4) information about the notification officer ("Ahmed Al Mansouri the entrusted from Dubai Courts"); and (5) the person served ("Mr. Igaz Anwar Khorshed").

Dkt. No. 89 at 25. Artec does not, however, assert that the certificate of service filed with the court discloses "the subject of the notification." The document states that "Mr. Igaz Anwar Khorshed has received a copy of the attached documents," but no documents are attached in Artec's filing. Dkt. No. 87.

Axon challenges Artec's compliance with UAE law on three grounds: 1) the notified party is listed on the certificate as "Hamden Mostafa," rather than Axon, 2) the certificate of service states that "the party required to be notified is in the other branch," implying that the documents were not delivered to the required party, and 3) the certificate of service does not identify or attach the documents served. The court is not persuaded by Axon's first two arguments. Hamdan

---

[1] Artec also argues that Axon's motion should be denied because the notification document requirements would be more properly challenged under Federal Rule of Civil Procedure 12(b)(4) for insufficient process. However, Axon asserts that the notification document is "required under U.A.E. law *for service* of process." *Nabulsi*, 2009 WL 1658017 at *9.

14
15-cv-03449-RMW
ORDER DENYING AXON BUSINESS SYSTEMS, LLC'S MOTION TO DISMISS
FC

1  Mostafa is the CEO of Axon. Dkt. No. 85-1, Mostafa Decl. ¶ 2. While the certificate lists Hamdan
2  Mostafa as the "notified party," the certificate calls for service at the "headquarter of Axon
3  Business Systems (L.L.C)." The court has no basis for finding that the certificate's information
4  "about the party being served" is not sufficient under UAE law. Similarly, it is not clear from
5  Axon's statement of UAE law or the certificate itself that service is invalid because an Axon
6  manager, rather than the CEO, received the documents. The court finds, however, that Artec has
7  not met its burden to establish valid service because the certificate does not identify or attach
8  documents showing "the subject of the notification." *Nabulsi*, 2009 WL 1658017 at *9; *see also*
9  Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint.").

Although Axon moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5), the "choice between dismissal and quashing service of process is in the district court's discretion." *Stevens v. Sec. Pac. Nat'l Bank,* 538 F.2d 1387, 1389 (9th Cir.1976). "Dismissal is not appropriate when there is a reasonable prospect that service may yet be obtained." *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 879 (N.D. Cal. 2011); *see also* 5B Wright & Miller, Federal Practice & Procedure § 1354 (3d ed. 2016) ("service generally will be quashed and the action preserved in those situations in which there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly").

Axon has not alleged that it has not received a copy of the summons and complaint. There is a reasonable possibility that valid service has already occurred, and if not, there is a reasonable prospect that valid service may yet be accomplished. "Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended." Fed. R. Civ. P. 4(l)(3). The court declines to dismiss this action or quash service. Within thirty days of this order, Artec must either 1) amend its proof of service to establish validity of service or 2) effect valid service and provide proof of such service to the court. If Artec fails to comply with this order, Axon may renew its motion for insufficient service of process.

### III.  CONCLUSION

For the reasons stated herein, the court concludes that Artec has made a prima facie

15
15-cv-03449-RMW
ORDER DENYING AXON BUSINESS SYSTEMS, LLC'S MOTION TO DISMISS
FC

showing of personal jurisdiction but has not established valid service. Within thirty days of this order, Artec must either 1) amend its proof of service to establish validity of service or 2) effect valid service and provide proof of such service to the court. Axon's motion to dismiss for lack of personal jurisdiction and insufficient service of process is denied.

**IT IS SO ORDERED.**

Dated: May 5, 2016

_____
Ronald M. Whyte
United States District Judge