UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTEC GROUP, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREY KLIMOV, et al.,<br><br>    Defendants. | Case No. 15-cv-03449-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 125 |

    Plaintiff Artec Group, Inc. alleges trade secret misappropriation, breach of contract, and related causes of action against three former employees and three corporations. Defendant Axon Business Systems, LLC moves to dismiss Artec's seven causes of action against Axon for failure to state claim. Docket No. 125.[1] The Court heard argument on September 30, 2016. Defendant Axon's motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

    Artec Group, Inc. is a California corporation specializing in the design and manufacture of 3D scanners and facial recognition devices. Docket No. 80, First Amended Complaint ¶ 1. Artec alleges that a group of former Artec officers, directors, and employees breached their employment contracts by conspiring to misappropriate trade secrets and compete directly with Artec through

---

[1] Plaintiff makes a half-hearted argument that all of the arguments asserted by Axon in this motion "could have been brought months ago in its first motion to dismiss." Docket No. 141 at 1. Under Federal Rule of Civil Procedure 12(g)(2), a party that makes a motion to dismiss under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Axon notes that its first motion was a "special limited appearance" for the purposes of challenging jurisdiction. Docket No. 125 at 2. In any case, judicial economy favors resolution of Axon's motion because Axon would be able to renew the same arguments presented here in a Rule 12(c) motion for judgment on the pleadings after filing an answer. *See, e.g.*, *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL 2690437, at *2 (N.D. Cal. July 8, 2011).

two newly formed companies, A-Star LLC and ID-Wise SIA. *Id.* ¶¶ 3, 85-94. Artec alleges that Axon Business Systems, LLC, a third corporate defendant, breached an Artec distribution agreement by purchasing and receiving Artec-branded products from defendant A-Star. *Id.* ¶¶ 20, 139-43.

Axon is a United Arab Emirates limited liability company with its principal place of business in Dubai. *Id.* ¶ 19. On August 8, 2012, Artec and Axon entered into a "Non-Exclusive Distribution Agreement." *Id.* ¶¶ 20, 76. Under the NDA, Axon had "the right to sell [Artec's] facial recognition devices and 3D scanners, including in connection with [Artec's] trademarked 'Broadway 3D' lines, to purchasers in the UAE." *Id.* ¶ 76. The term of the agreement was one year, but certain provisions of the agreement survived its termination. *Id.* ¶ 77. For example, Axon has a continuing obligation to maintain the secrecy of Artec's confidential information and refrain from selling "products similar to or competitive with" Artec's products in the UAE without Artec's permission. *Id.* ¶¶ 20, 77-83. Artec alleges that Axon breached the NDA by, *e.g.*, entering into an agreement with A-Star in January 2015 pursuant to which A-Star sold 112 Artec Broadway 3D devices to Axon for distribution in the UAE[2]; by distributing competing products in the UAE; by failing to notify Artec of competing or allegedly infringing products; by failing to maintain confidential information; and by failing to immediately cease using Artec marks following termination of the NDA. *Id.* ¶¶ 125-26, 182-83.

## II.   ANALYSIS

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility

---

[2] "The agreement was for a grand total of $819,273, which in aggregate was a far lower price than Artec Group's usual price for authentic [Artec] devices." FAC ¶ 126. Artec alleges, on information and belief, that "these products and/or the parts needed to manufacture there were deliberately stolen by [A-Star] and the [individual defendants], or some of them, from Artec Group warehouses and then shipped to [Axon]." FAC ¶ 128.

2

1  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that
2  a defendant has acted unlawfully." *Id.* (internal citation omitted).  "Determining whether a
3  complaint states a plausible claim for relief . . . [is] a context-specific task that requires the
4  reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "When there
5  are well-pleaded factual allegations, a court should assume their veracity and then determine
6  whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  However, "the tenet that a
7  court must accept as true all of the allegations contained in a complaint is inapplicable to legal
8  conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere
9  conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Plaintiff asserts seven causes of action against Axon: breach of distributor agreement, (Count 4); unjust enrichment (Count 5); breach of implied covenant of good faith and fair dealing (Count 7); conversion (Count 9); civil conspiracy (Count 13); constructive trust (Count 14); and unfair competition (Count 16).  The Court dismisses plaintiff's claims for unjust enrichment (Count 5), civil conspiracy (Count 13), constructive trust (Count 14), and unfair competition (Count 16) as preempted by CUTSA.  Axon's motion is otherwise denied (Counts 4, 7, and 9).

A.   Contract Claims

Plaintiff alleges that Axon breached four provisions of the NDA: Sections 2.9, 2.11, 2.12, and 7.5.  Axon argues that Section 2.9 is unenforceable under California law and that Plaintiff has failed to allege any breach of Sections 2.11, 2.12, and 7.5.  Axon also moves to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing as superfluous.  The Court declines to dismiss Plaintiff's contract claims.

1.   Sections 2.9

Section 2.9 of the NDA states:

> Except for equipment or products that Distributor was already selling or distributing in the Territory prior to the date of this Agreement, Distributor shall not develop, manufacture, or distribute equipment or products similar to or competitive with the Products in the Territory without ARTEC's prior written consent.  Distributor shall keep ARTEC informed of Distributor's current or future sales of equipment or products similar to or competitive with the Products in the Territory.  In the event that Distributor begins sales of equipment or products similar or competitive with the Products,

3

> Distributor shall inform ARTEC of that fact not later than one month after the commencement of such sales.

Docket No. 90-1.  Plaintiff alleges that Axon breached this section by distributing equipment or products similar to or competitive with Artec's products in the UAE without Artec's prior written consent and without keeping Artec informed.  *See* FAC ¶ 182.  Axon argues that the whole provision is an unenforceable non-compete agreement.

In California, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.[3] Section 16600 "protects 'the important legal right of persons to engage in businesses and occupations of their choosing.'"  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946, 189 P.3d 285, 291 (2008) (quoting *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997)). Restraints on the ability to compete *after* an agreement terminates – even for only a particular geographical region – are void under section 16600.  *See, e.g.*, *Edwards*, 44 Cal. at 948 (finding non-compete clause invalid because it restricted employee from providing professional services in Los Angeles and to former clients for period of time after termination); *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 656 (Ct. App. 1960) (affirming invalidity of provision "wherein defendant agreed not to sell or lease in that territory any equipment during the three-year period after the termination of the agreement").  What is less clear is whether Section 2.9 is an unenforceable provision while the contract between the parties is "in term" (*i.e.*, while the contract is still in force and not yet terminated).

This Court declines to find that Section 2.9 is unenforceable for the time *before* termination of the NDA between the parties.  *See Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 509 (2013), *as modified* (Oct. 29, 2013), *as modified on denial of reh'g* (Nov. 7, 2013) ("statute does not affect limitations on an employee's conduct or duties *while* employed"). Axon claims that *Angelica Textile* has no application here because it was decided based on the employee's duty of loyalty to the employer while employed.  However, in the majority of cases

---

[3] The statute contains a few exceptions, none of which are applicable in this case.

4

cited by Axon, the void provisions restrained a party *after* termination of the agreement.[4]  For example, in *Beatty Safway Scaffold*, the court addressed a provision that prohibited the distributor from competing "during the continuance of this agreement and for three (3) years thereafter," but found only the "portion of the agreement pertaining to the three-year period" invalid.  180 Cal. App.  2d at 652.

Because it is not clear from the allegations in the complaint whether or not the contract was in term (*i.e.*, still in effect) at the time of the alleged breach, Axon's motion to dismiss is denied.

Moreover, even if the contract were *not* in term at the time of the alleged breach, Axon's motion should still be denied, at least at this point in the proceedings.  Artec fairly points out that whether a provision operates as "a restraint of substantial character" for purposes of § 16600, *Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1093 (9th Cir.  2015), is a fact-intensive inquiry.  Given that all allegations are taken is true and all reasonable inferences must be drawn in Artec's favor, the merits should be decided a later juncture in this litigation, and not at the 12(b)(6) phase.

The Court, however, is not persuaded by Plaintiff's contention that the provision at issue in this case is enforceable under the "trade secrets" exception to section 16600.  *See, e.g.*, *Latona v. Aetna United States Healthcare, Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999) (citing case "finding that section 16600 permits non-compete provisions in employment contracts when 'necessary to protect the employer's trade secrets'" but concluding that agreement at issue "cannot qualify for the trade secret exception to section 16600" because, *inter alia*, parties had "signed a legal confidentiality agreement" and thus "paragraph 4 of the Agreement added nothing").  As an initial matter, the California Supreme Court's *Edwards* decision called into doubt the continued viability of the trade secrets: "We do not here address the applicability of the so-called trade secret exception to section 16600."  44 Cal. 4th at 946.  In any event, the Court need not address the continued viability of the exception because the provision at issue in the instant case would apply

---

[4] In *Gatan, Inc. v. Nion Co.*, No. 15-CV-1862-PJH, 2016 U.S. Dist. LEXIS 42764 (N.D. Cal. Mar. 30, 2016), the district court voided a non-compete clause in a reseller agreement that applied both "'during the term *and* for one (1) year following the conclusion of the Term." – without addressing the two timeframes separately.  *Id.* at *2 (emphasis added).

5

1  to all products "similar to or competitive with" Artec products, regardless of whether the products
2  involve protected or confidential information, and the agreement contains separate provisions to
3  address confidential information.  The cases cited by Plaintiff do not support the application of a
4  trade secrets exception under these circumstances.  *See, e.g.*, *Gatan*, 2016 U.S. Dist. LEXIS
5  42764, at *7-8 (provision "cannot be considered 'necessary' to protect Gatan's trade secrets"
6  where agreement "already contains a separate provision, entitled "Use of Confidential
7  Information," which provides protection for Gatan's trade secrets"); *Applied Materials, Inc. v.*
8  *Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1091 (N.D. Cal.
9  2009) (exception does not apply because provision "touches post-employment inventions,
10 regardless of when they were conceived or whether they were based on Applied's confidential
11 information"); *Dowell*, 179 Cal. App. 4th at 577 (exception does not apply because "clauses in the
12 agreements are not narrowly tailored or carefully limited to the protection of trade secrets").

### 2. Section 7.5

Section 7.5 states:

> Upon termination of this Agreement, Distributor shall immediately cease all use of the ARTEC Marks.

Docket No. 90-1.  Plaintiff alleges that Axon breach this section continuing to use Artec's marks after the agreement terminated.  Axon argues that these allegations do not identify a specific mark, or how Axon's use the mark.  The Court disagrees.  Plaintiff alleges that Axon contracted "for the unauthorized sale of 112 ARTEC's Broadway 3D devices, or infringing counterfeits or reproductions thereof" and continued "to transact for 3D scanners, facial recognition devices and/or intercom devices with A-STAR."  FAC ¶ 182.  Plaintiff has identified the mark in question (Broadway 3D) and the transactions at issue.

### 3. Section 2.12

Section 2.12 states:

> Distributor shall maintain in confidence and not disclose to any third party any Confidential Information.  Distributor shall make no use of Confidential Information except to further the business interests of the parties as contemplated by this Agreement.  Distributor shall not use the Confidential Information to the detriment of ARTEC

United States District Court
For the Northern District of California

> under any circumstances. All Confidential Information is the sole and exclusive property of ARTEC. Distributor will return to ARTEC all Confidential Information upon termination of this Agreement. Distributor's obligations with respect to the disclosure and use of Confidential Information shall survive the termination or expiration of this Agreement. Distributor agrees that ARTEC's training materials, service manuals, and all technical documents relating to the equipment shall be considered Confidential Information and that such materials will be safeguarded and returned to ARTEC in accordance with this provision, unless notified otherwise in writing by ARTEC.

*Id.* Plaintiff alleges that Axon violated this section by continuing "to transact for 3D scanners, facial recognition devices and/or intercom devices with A-STAR." FAC ¶ 182.

Axon claims that these allegations do not adequately identify the "Confidential Information" at issue in the alleged violations of Sections 2.11 and 2.12. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990 (S.D. Cal. 2012) (dismissing breach of contract claim where counterclaimant failed to plead "what the 'trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the agreements"). In this case, Artec argues that Confidential Information is broadly defined in the NDA. FAC ¶ 72 n. 13. The definition of "Confidential Information" includes "intellectual property, trade secrets, and other proprietary information relating to ARTEC's business strategies, plans, financial data, projections, customer information, markets, and Products." Docket No. 90-1 § 1.1. The Court is not persuaded that a broad definition of confidential information is enough to plausibly allege that the transactions at issue involved disclosure of Artec's confidential information. Therefore, Plaintiff's claim for breach of Section 2.12 is dismissed with leave to amend. Artec must identify with specificity what confidential information is at issue.

    4.    <u>Sections 2.11</u>

Section 2.11 states:

> Distributor shall timely report market information to ARTEC on competitive activities, market conditions and developments, and local legislation affecting sales of the Products in the Territory. Distributor shall notify ARTEC promptly of any and all infringements, limitations, simulations, illegal uses, or misuses of the ARTEC Marks, patents, and other intellectual property rights, Distributor shall forward to ARTEC any inquiries regarding the Products received from Customers located outside the Territory.

7

Docket No. 90-1.  Plaintiff alleges that Axon violated this section by failing to promptly notify Artec of infringements and misuses of Artec's intellectual property.  FAC ¶ 182.

Axon again argues that Plaintiff failed to adequately identify the "Confidential Information" at issue.  To the extent Plaintiff's claim for breach of Section 2.11 is based on Axon's alleged use of Artec's Broadway 3D mark, the Court finds the allegations in the complaint sufficient.  To the extent Plaintiff's claim is based on the disclosure of unidentified "Confidential Information" in the scanner products, the claim is dismissed with leave to amend.

### 5. Implied Covenant of Good Faith and Fair Dealing

To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's right to benefit from the contract.  *See Racine & Laramie v. Dep't of Parks & Rec.*, 11 Cal.App.4th 1026, 1031 (1992).  Plaintiff alleges that Artec breached the implied covenant by secretly engaging in the purchase of devices that A-Star "unlawfully stole or replicated," thereby frustrating Artec's ability to benefit from the NDA – which prohibits Axon from distributing products that "similar to or competitive with" Artec's products and requires Axon to keep Artec informed of such sales.  FAC ¶¶ 11, 55, 127-19.  These allegations are sufficient to plead a cause of action.  *See Gonzalez v. JP Morgan Chase Bank, N.A.*, No. C-14-2558 EMC, 2014 U.S. Dist. LEXIS 152674, at *19-20 (N.D. Cal. Oct. 28, 2014) (stating that "[t]he covenant of good faith and fair dealing is implied by law into every contract, functioning 'as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract'"); *Basic Research, LLC v. Rath*, No. C-09-00942 RMW, 2009 WL 3064771, at *2-3 (N.D. Cal. Sept. 24, 2009) (finding allegations that "because the explicit terms of the agreements require Rath to cease the sale and marketing of Relacor products, Rath is frustrating the plaintiffs' right to realize the benefits of the settlement agreement by maintaining and acquiring foreign trademarks and registrations using 'rel' and 'cor'" sufficient at pleading stage).  Plaintiff is permitted to plead claims in the alternative.  Fed. R. Civ. Proc. 8(d)(2).  This Court notes that the contours of the NDA appear to be in dispute, and declines to dismiss Plaintiff's implied covenant

8

claim is duplicative at this stage of the litigation.

B.     Non-Contract Claims

Plaintiff's non-contract claims are dismissed as preempted by the California Uniform Trade Secrets Act. The CUTSA supersedes other civil remedies based on trade secret misappropriation. *See* Cal. Civ. Code § 3426.7(b)(2) ("This title does not affect ... other civil remedies that are not based upon misappropriation of a trade secret."). "CUTSA's 'comprehensive structure and breadth' suggests a legislative intent to occupy the field," and the CUTSA preempts common law claims that are "'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal.App.4th 939, 954-58 (2009); *see NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839 (N.D. Cal. 2014) (noting that federal courts have follow the same rule). "CUTSA provides the exclusive civil remedy for conduct falling within its terms." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal.App.4th 210, 236 (2010, *overruled on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 (2011).

In this case, Plaintiff's remaining claims are based on the same nucleus of facts as its misappropriation of trade secrets claim:

- ¶ 189: alleging unjust enrichment through "unauthorized use of ARTEC's Trade Secrets and Confidential Information;"
- ¶ 213: alleging conversion through defendants' taking of "ARTEC's Confidential Information to their use";
- ¶ 253: alleging civil conspiracy to misappropriate "Trade Secrets and Confidential Information of ARTEC and affiliated companies; and using such Trade Secrets and Confidential Information to tortiously interfere with the contractual relationships existing between ARTEC and various distributors and end customers;"
- ¶ 265: alleging constructive trust through "the actions taken to compete against Artec and to profit from the unauthorized sale of Artec Devices and devices based on Trade Secrets and Confidential Information;" and
- ¶ 283: alleging unfair competition through "tortious interference with the Employment

9

> Agreements and NCIAs of ARTEC employees; the misappropriation of ARTEC's Trade Secrets and Confidential Information, vendor and distributor information, and customer information; and the unauthorized manufacture and sale of devices or products identical or substantially similar to ARTEC Devices."

Because the Court finds Plaintiff's claims for unjust enrichment, conversion, civil conspiracy, constructive trust, and unfair competition preempted, the Court does not reach Axon's remaining arguments in favor of dismissal.

Plaintiff argues that its claims based on "the misappropriation of otherwise confidential or proprietary, but not trade secret, information" should not be preempted. *Leatt Corp. v. Innovative Safety Tech., LLC*, No. 09-CV-1301-IEG (POR), 2010 WL 2803947, at *6 n.5 (S.D. Cal. July 15, 2010) ("A careful reading of the *Silvaco* decision reveals that it does not undermine the conclusion that the UTSA only preempts additional claims that depend on the misappropriation of a trade secret."). The Court is not persuaded by the reasoning in *Leatt*. In *Silvaco*, the California Court of Appeal

> emphatically reject[ed] the . . . suggestion that the uniform act was not intended to preempt "common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant." On the contrary, a prime purpose of the law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is – and is not – liable for acquiring, disclosing, or using "information . . . of value." Central to the effort was the act's definition of a trade secret. Information that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen. By permitting the conversion claim to proceed on a contrary rationale, the *Cenveo* court impliedly *created* a new category of intellectual property far beyond the contemplation of the act, subsuming its definition of "trade secret" and effectively obliterating the uniform system it seeks to generate.

184 Cal. App. 4th at 239 n.22 (emphasis in original). "The majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA." *SunPower*, 2012 WL 6160472, at *6 (collecting cases); *see also Total Recall Techs. v. Luckey*, No. C 15-02281 WHA, 2016 WL 199796, at *8 (N.D. Cal. Jan. 16, 2016) ("to the extent Total Recall's claims rely on the alleged misappropriation of Confidential Information, any such claims are superseded by

10

CUTSA"). This Court, therefore, is persuaded that Plaintiff's claims based on its non-trade secret proprietary information are superseded.

The Court also rejects Plaintiff's argument that preemption should not apply because Plaintiff does not assert a trade secrets misappropriation claim against Axon. "[S]uch a rule would defeat preemption by allowing plaintiffs to intentionally omit CUTSA claims in favor of other claims." *NetApp*, 41 F. Supp. 3d at 840.

### III. CONCLUSION

For the reasons stated herein, Axon's motion to dismiss Counts 4 and 7 is **DENIED**, except to the extent such claims depend on the alleged disclosure of unidentified "Confidential Information." Axon's motion to dismiss Counts 5, 7, 8, 13, 14, and 16 is **GRANTED**. Plaintiff is granted thirty days leave to amend.

This order disposes of Docket No. 125.

**IT IS SO ORDERED**.

Dated: December 8, 2016

_____
EDWARD M. CHEN
United States District Judge