UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTEC GROUP, INC., <br> Plaintiff, <br> v. <br> ANDREY KLIMOV, et al., <br> Defendants. | Case No. 15-cv-03449-EMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO VACATE DEFAULT** <br> Docket No. 320 |

Plaintiff Artec Group, Inc. is a company that produces 3D scanning and 3D facial recognition devices. Its flagship facial recognition product is the "Broadway 3D" line of devices. Artec filed the instant action, claiming that its trade secrets were misappropriated by its then-CEO Andrey Klimov and a group of "rogue employees" who set up two competing companies, A-Star, LLC and ID-Wise SIA. Artec also filed suit against Axon Business Systems, LLC, a company with whom it had, for a period of time, a distribution agreement pursuant. Under that agreement, Axon, a UAE company, could resell Artec products in the UAE. According to Artec, Axon breached the distribution agreement (1) when it purchased Broadway 3D devices from A-Star and (2) when it purchased competing devices – known as "EnterFace" – from ID-Wise.

Currently pending before the Court is Axon's motion to set aside its default. Having considered the parties' briefs and accompanying submissions,[1] as well as all other evidence of record, the Court remains of the view that oral argument on the motion is not necessary. The hearing on the motion is therefore **VACATED**. Axon's motion to set aside the default is hereby **GRANTED**.

---

[1] The Court is in receipt of Defendant Axon's motion for permission to file its Reply, Docket No. 326. The motion is **DENIED** as moot.

## I. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 55(c), a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "To determine 'good cause,' a court must 'consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." *United States v. Signed Pers. Check No. 730*, 615 F.3d 1085, 1091 (9th Cir. 2010). The moving party has "the burden of showing that any of these factors favor[s] setting aside the default." *Franchise Holding II, Ltd. Liab. Co. v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). On the other hand, as the "factors are disjunctive, [a] district court [is] free to deny the motion [to set aside the default] 'if any of the three factors [is] true.'" *Id.*; *see also Livingston v. Art.com, Inc.*, No. 13-cv-03748-JSC, 2015 U.S. Dist. LEXIS 92211, at *7 (N.D. Cal. Apr. 17, 2015) ("Put another way, the defendant must show that 'any of these factors favor[s] setting aside the default,' and the default may stand if any of the three factors weighs against Defendant.").

B. Culpable Conduct

In assessing whether a defendant has engaged in culpable conduct, a court cannot treat a defendant "as culpable simply for having made a conscious choice not to answer [or litigate]; rather, . . . the [defendant] must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Signed Personal Check*, 615 F.3d at 1092. The Ninth Circuit has "'typically held that a defendant's conduct was culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful or bad faith failure to respond [or litigate].'" *Id.*

In its papers, Artec argues that Axon has engaged in culpable conduct because it

> mounted a vigorous defense when pursuing its arguments that it should not be a party to this litigation. But once it had exhausted these arguments [via its motion to dismiss for lack of personal jurisdiction and motion to dismiss for failure to state a claim for relief] and was faced with Artec's legitimate claims against it and the relevant discovery, Axon claimed to no longer be able to afford U.S. litigation.

2

Opp'n at 3. Artec continues:

> The bad faith of [Axon's] conduct became apparent later when, within days of the completion of discovery in the case, Axon's counsel again re-appeared in order to represent Axon at the settlement conference in August – which they were allowed to do even though other individual defendants were ordered to appear in person – and then to take up again Axon's claims of lack of personal jurisdiction.

Opp'n at 4.

The Court declines to find that Axon engaged in culpable conduct for purposes of the pending motion. It was not unreasonable for Axon to conclude that it was no longer financially worthwhile to defend the lawsuit, but to still try to contest the default judgment motion which could render it financially liable and to still try to settle the dispute.

C.     <u>Prejudice to Artec</u>

"[M]erely being forced to litigate on the merits cannot be considered prejudicial" for purposes of setting aside a default. *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (adding that it is "obvious" why – "had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so"; "[a] default judgment gives the plaintiff something of a windfall," and "vacating the default judgment merely restores the parties to an even footing in the litigation"). Moreover, "'[t]o be prejudicial, the setting aside of a [default] must result in greater harm than simply delaying resolution of the case.'" *Signed Personal Check*, 615 F.3d at 1095. "Rather, 'the standard is whether [the plaintiff's] ability to pursue his claim will be hindered'" – *e.g.*, the delay results in "'tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.'" *TCI*, 244 F.3d at 701.

In its papers, Artec does not do much to address the prejudice prong. It simply states that it "is prejudiced by the repeated delays in this case, which will necessarily diminish witnesses' memories of the incidents occurring in 2012 to 2015 that comprise the claims against Axon." Opp'n at 5. But the delays in this case are not entirely attributable to Axon. In any event, Artec's argument of prejudice is fairly conclusory. Artec fails to specify which witnesses will be impacted and why.

3

D. Meritorious Defense

The "meritorious defense" factor does not impose an "'extraordinarily heavy'" burden on the party moving to set aside the default." *Signed Personal Check*, 615 F.3d at 1094. "All that is necessary . . . is [that the moving party] allege sufficient facts that, it true, would constitute a defense." *Id.* (adding that "'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default[;] [r]ather, that question 'would be the subject of the later litigation'").

In its motion, Axon argues that it has multiple meritorious defenses. The main defense invoked by Axon is lack of personal jurisdiction. However, Axon also argues that, even if there were personal jurisdiction, the "fleshing out" of Artec's claims through its motion for default judgment establishes the lack of merit to Artec's case.

1. Personal Jurisdiction

In assessing Axon's personal jurisdiction defense, the Court must first take into account that, previously (in May 2016), Judge Whyte denied Axon's motion to dismiss for lack of personal jurisdiction. *See* Docket No. 104 (order). Given that Judge Whyte's ruling is the law of the case, then, arguably, the Court should not now entertain Axon's personal jurisdiction defense – especially since (1) Axon has not asked for an evidentiary hearing on personal jurisdiction,[2] and (2) Axon has not formally moved for reconsideration of Judge Whyte's decision. It makes little sense, however, to take that approach because, effectively, Axon is indicating that it wants reconsideration of Judge Whyte's decision, particularly in light of a Supreme Court decision that

---

[2] Because Judge Whyte considered written materials only in conjunction with Axon's motion to dismiss for personal jurisdiction, Artec simply had to make a prima facie showing of personal jurisdiction in order to defeat the motion. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (stating that where a court "receive[s] only affidavits or affidavits plus discovery materials" in conjunction with a motion to dismiss for lack of personal jurisdiction, a plaintiff "must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss"). This would not appear to preclude Axon from asking for a full evidentiary hearing on personal jurisdiction, at which time Artec would have to prove such by a preponderance of the evidence. *See id.* (noting that, if a plaintiff makes a prima facie showing, "it does not necessarily mean that [the plaintiff] may then go to trial on the merits"; "the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues," and, "[i]n this situation, where plaintiff is put to his full proof, plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial").

4

was issued approximately a year after Judge Whyte's ruling. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).[3] *See* Civ. L.R. 7-9(b)(2) (providing that, in filing a motion for leave to file a motion for reconsideration, a party must show, *e.g.*, "[t]he emergence of new material facts or a change of law occurring after the time of such order").

The Court acknowledges Artec's position that *Bristol-Myers* is not a change of law and that, in any event, the case is distinguishable from the instant case. Nevertheless, the Court is persuaded that *Bristol-Myers* sheds additional light on the law on personal jurisdiction such that it would be a sufficient basis to allow Axon to move to reconsider (although the Court expresses no opinion as to how it would ultimately rule on such a motion). Because personal jurisdiction is an issue that may be revisited, the meritorious defense factor (a low threshold) is satisfied.

2. Breach of Contract

Furthermore, even if personal jurisdiction could not be contested, the Court would still find the meritorious defense factor satisfied. Following the Court's 12(b)(6) order, only contract and related claims remain in this case. The contract provisions at issue are §§ 2.9, 2.11, and 7.5 of the distribution agreement.

With respect to § 2.9 (which barred Axon from distributing competitive products and imposed an obligation on Axon to keep Artec informed of sales of competitive products), there is a serious question as to whether it survived termination of the distribution agreement. Although § 7.2 of the distribution agreement provides that "[t]he restrictions on the use and dissemination of Confidential Information stated in Section[] . . . 2.9 shall survive termination," Dist. Agmt. § 7.2, the provisions of § 2.9 that were allegedly breached do not appear to be related to the use and dissemination of Confidential Information.[4] Moreover, even if § 2.9 did survive termination, there

---

[3] *Bristol-Myers* was decided on June 19, 2017. This was after not only Judge Whyte's personal jurisdiction order, *see* Docket No. 104 (order, filed on May 5, 2016), but also this Court's 12(b)(6) order. *See* Docket No. 154 (order, filed on December 8, 2016). This was also after this Court's order giving final approval to defense counsel's motion to withdraw. *See* Docket No. 254 (order, filed on May 19, 2017).

[4] To the extent Artec tries to argue survival based on a different theory – namely, renewal of the distribution agreement by virtue of continued dealings between Artec and Axon – that argument is potentially problematic for several reasons. First, that is not the theory of survival that Artec pled in its complaint. Second, that position goes directly against § 7.1 of the agreement which provides

5

is a serious question as to whether it is, at least in part, an impermissible restraint on trade under California Business & Professions Code § 16600. The Court's 12(b)(6) order did not foreclose the § 16600 defense and, based on Artec's motion for default judgment, which sheds light on the factual basis for the claim of breach based on § 2.9, there is a fair argument that the defense is applicable.

With respect to § 2.11 (which imposes an obligation on Axon to notify Artec of misuse of Artec's intellectual property rights), there are also potentially meritorious defenses. For example, it is not clear that, at the time Axon entered into the purchase agreement with A-Star for the Broadway 3D devices, it knew or should have known that A-Star was not authorized to sell Broadway 3D devices. Also, it is not clear that Axon knew or should have known that ID-Wise's EnterFace product used Artec trade secrets or simply was a rebranding of stolen Broadway 3D devices. In the absence of such actual or constructive knowledge, Axon's duty to notify might not be triggered.

Finally, as to § 7.5 (which provides that, upon termination of the distribution agreement, Axon shall cease all use of the Artec marks), there seem to be serious questions on the merits as well. In its motion for default judgment, Artec indicates that, post-termination of the agreement, it and Axon continued to deal with one another and Axon continued to distribute Artec product. Thus, liability for a breach of § 7.5 would seem to depend on there being an *unauthorized* use of the Artec marks by Axon. As noted above, it is not clear that, at the time Axon entered into the purchase agreement with A-Star for the Broadway 3D devices, it knew or should have known that A-Star was not authorized to sell Broadway 3D devices.

## II. CONCLUSION

Taking into account the above three factors, the Court concludes that there is good cause to set aside Axon's default. Axon's motion is therefore granted.

The Court shall hold a status conference to address how best to proceed in light of the

---

that "renewal must be acknowledged *in writing* by ARTEC and [Axon]." Dist. Agmt. § 7.1 (emphasis added). Finally, continued dealings between Artec and Axon does not necessarily mean that *all* terms of the distribution agreement were thereby adopted by the parties.

6

Court's ruling. Artec and Axon are required to appear for the status conference. This includes counsel for Axon who asked for permission to file an opposition to Artec's motion for default judgment and who filed the motion to set aside the default. In light of their pending settlement with Artec, the Klimov Defendants may appear at the status conference (including telephonically) but are not required to do so.

**The status conference shall be held on September 28, 2017, at 10:30 a.m.** A joint status conference statement shall be filed by September 21, 2017.

This order disposes of Docket No. 320.

**IT IS SO ORDERED**.

Dated: September 15, 2017

_____
EDWARD M. CHEN
United States District Judge